IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BROADCAST MUSIC, INC. , ET AL | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 07-CV-3040 |
| SPRING MOUNT AREA BAVARIAN | : | |
| RESORT, LTD., ET AL. | : | |

**SURRICK, J.**                                                            **MAY 21, 2008**

## MEMORANDUM & ORDER

Presently before the Court is Plaintiffs' Motion for Default Judgment.  (Doc. No. 6.)  For the following reasons, Plaintiffs' Motion will be granted.

I.    **BACKGROUND**

Plaintiffs bring this action challenging multiple violations of their copyrights under the United States Copyright Act of 1976.  17 U.S.C. § 101 *et seq*.  Plaintiffs are a collection of music recording and licensing companies, and their affiliated artists, who collectively own the copyrights to various popular songs.  (Doc No. 1 ¶ 3-4.)  Plaintiffs allege that Defendant Spring Mountain Area Bavarian Resort is a business located in Schwenksville, Pennsylvania which operates an establishment known as Crazy Carol's Sports Bar.[1]  (*Id*. ¶ 5.)  Plaintiffs allege that as part of its business, Crazy Carol's performs, or causes to be performed, songs whose copyrights are owned by Plaintiffs.  (*Id*. at 6.)  Plaintiffs also allege that Defendant Carl Mattiola is an

---

[1] The docket identifies Defendant Spring Mountain Area Bavarian Resort as doing business under the name "Crazy Carol's Sports Bar."  Plaintiffs' motions, affidavits and exhibits identify this establishment as both "Crazy Carol's Sports Bar" and "Crazy Carl's Sports Bar." (Compare Doc. No. 1 ¶ 5 ("Carol's") with Doc. No. 6-4 ¶ 5 ("Carl's").  For purposes of this memorandum, we use the name entered in the docket by the Clerk of Court, "Crazy Carol's Sports Bar."

officer of the Defendant resort, with responsibility and control over the operation of Crazy Carol's.  (*Id*. at 8.)

Plaintiffs assert that they first became aware of Defendants' infringement of their copyright in August, 2005.  (Doc. No. 6-4, Affidavit of Lawrence E. Stevens, ¶ 3.)  Between August, 2005 and May, 2007, Plaintiffs sent Defendants numerous letters, advising them that a license was required, and offering to enter into a licensing agreement.  (*See id*. ¶¶ 4-6.)  When Plaintiffs received no response to these communications, they began sending regular "cease and desist" letters, demanding that Defendants honor their copyrights.  (*See id*. ¶ 7.)  During this time period, Plaintiff placed calls to Defendants forty-eight times in an effort to address this issue. (*Id*. ¶ 8.)  These phone calls included twelve direct communications with Defendant Mattiola. (*Id*.)

On May 17, 2007, Plaintiffs dispatched a representative, Michael Nelson, to visit Defendants' place of business to determine whether Defendants continued to violate Plaintiffs' copyrights.  (*Id*., Ex. A, Certified Infringement Report.)  As documented in the Certified Infringement Report, during a period of approximately four hours, Nelson observed and documented extensive violation of Plaintiffs' copyrights in the Defendant's place of business. (*Id*.)  Lawrence Stevens, BMI's Assistant Vice President for General Licensing avers that, to the best of Plaintiffs' knowledge and belief, such copyright infringement has continued since Nelson's investigation.  (Doc. No. 6-4 ¶ 15.)  Stevens further avers that if Defendants had entered into a typical licensing agreement with Plaintiffs in August, 2005, when Plaintiffs first contacted them and raised the infringement issue, the licensing fees owed between that date and Plaintiffs' September, 2007 Motion for Default Judgment would have totaled $10,340.00.  (*Id*.)

2

Plaintiffs filed a Complaint on July 25, 2007, alleging copyright infringement, and requesting injunctive relief, statutory damages, costs and attorneys' fees.  (Doc. No. 1.) Plaintiffs' Complaint and summons were delivered to Defendants by hand at Crazy Carol's Sports Bar on August 3, 2007.  (Doc. No. 4.)  Defendants' Answer was due no later than August 23, 2007.

Defendants have not answered Plaintiffs' Complaint, and have not entered an appearance in this matter.  On September 17, 2007, pursuant to Plaintiffs' request, the Clerk of the Court entered a default against Defendants.  (Doc. No. 5.)  Plaintiffs filed a Motion For Default Judgment on September 18, 2007.  (Doc. No. 6.)  Plaintiffs allege eight separate and discreet infringements of their copyrights.[2]  (*Id.* at 2.)  Plaintiffs seek statutory damages in the amount of $2,000.00 for each of the eight violations, an injunction prohibiting further copyright infringement by Defendants, the award of legal fees and costs in the amount of $5,355.00, and an order requiring the payment of interest on any monetary awards.  (*Id.*)

## II.   LEGAL STANDARD

### A.   Default Judgment

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when default has been entered by the Clerk of Court.  Fed. R. Civ. P.

---

[2] Plaintiffs have appended a "Schedule" to their Complaint specifying the eight copyrighted works they claim were performed without license.  (*See* Doc. No. 1.)  They are: "Billie Jean," written by Michael Jackson; "Boogie Shoes," written by Harry Wayne Casey; "I Can't Wait," written by John Smith; "Jessie's Girl," written by Richard Lewis Springthorpe; "Maneater," written by Sara Allen, John Oates and Daryl Hall; "Stayin' Alive" a/k/a "Staying Alive," written by Barry Gibb, Robin Gibb and Maurice Gibb; "Take On Me," written by Magne Furuholmen, Pal Waaktaar and Morten Harket; and "You Can Call Me Al," written by Paul Simon.  (*Id.*)  Plaintiffs alleged that their copyrights to all of these works were infringed at Defendants' place of business on May 17, 2007.  (*Id.*)

55(b)(2).  The entry of a default by the Clerk, however, does not automatically entitle the non-defaulting party to a default judgment.  *D'Onofrio v. Il Mattino*, 430 F.Supp.2d 431, 437 (E.D.Pa. 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984); *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C.Cir. 2005)).  The decision as to whether to enter a judgment by default is left to the sound discretion of the district court.  *Hritz*, 732 F.2d at 1180.  Moreover, judgment by default is generally disfavored.  *Lorenzo v. Griffith*, 12 F.3d 23, 27 n.4 (3d Cir. 1993); *NuMed Rehabilitation, Inc. v. TNS Nursing Homes of Pennsylvania, Inc.*, 187 F.R.D. 222, 223-24 (E.D.Pa. 1999).

The Third Circuit has enumerated three factors that govern a district court's determination as to whether a default judgment should be entered: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).  Although the Court should accept as true the well-pleaded factual allegations of the Complaint when considering a motion for default judgment, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).  Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Directv, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Directv, Inc. v. Croce*, 332 F.Supp.2d 715, 717 (D.N.J. 2004).

**B.    Copyright Infringement**

To establish its claim of copyright infringement, a plaintiff must establish by a preponderance of the evidence: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002); *see also Mike Rosen & Associates, P.C. v. Omega Builders, Ltd.*, 940 F.Supp. 115, 119 (E.D.Pa. 1996) (citing *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (1991)). "Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the rights to distribute and reproduce copyrighted material." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005).

## III.   LEGAL ANALYSIS

### A.   Defendants' Default

Plaintiff identifies, and seeks damages for, eight specific infringements of its copyrights. (*See* Doc. No. 1, Ex. A.)  We accept as true Plaintiffs' allegations that it owns the legal copyright to each of the eight songs in question.  (Doc. No. 1 ¶ 3.)  Each of the eight alleged instances of copyright infringement is supported by a Certified Infringement Report, which was prepared by Michael Nelson and signed under penalty of perjury.  (Doc. No. 6-4, Ex. A.)  Specifically, this report indicates that all eight of the songs for which Plaintiffs claim copyright infringement were performed without license on May 17, 2007 at Defendants' place of business.  (*Id.*)  We conclude that Defendants are liable for these eight instances of copyright infringement.

We also conclude that the Defendants infringed these copyrights willfully.  Defendants' default and their decision not to defend against these allegations are grounds for concluding that their actions were willful.  *See Sony Music Entertainment v. Cassette Production, Inc.*, Civ. No.

92-4494, 1996 WL 673158, at *5 (D.N.J. Sept. 30, 1996) ("The Court may infer that Defendant .

. . willfully infringed Plaintiffs' copyrights in their sound recordings because Defendant . . .

defaulted and consciously chose not to defend this action.").  Moreover, based on the record

before us, it is clear that the specific acts of infringement in question, which took place on May

17, 2007, occurred approximately twenty-three months after Defendants were first notified by

Plaintiffs of their infringing conduct, and followed numerous attempts by Plaintiffs to contact

Defendants by mail and telephone, in an effort to resolve this situation amicably by entering into

a standard licensing agreement.  (*See* Doc. No. 6-4 ¶¶ 4-13, Ex. B.)  Plaintiffs provided

Defendants with clear and unambiguous notice that they were infringing Plaintiffs' copyrights,

and Defendants nonetheless persisted in their unlicensed use.

Turning to the *Chamberlain* factors, it is evident from the limited record before us that

entry of default judgment against Defendants is appropriate.  First, the evidence suggests that

Plaintiffs have suffered quantifiable harm, and that they will continue to do so absent the entry of

default judgment.  Moreover, there is nothing in the record to suggest that Defendants have a

litigable defense as to liability.  The parties have not entered into a licensing agreement, and

there is no possibility that there is a legitimate contractual dispute.  Likewise, there is nothing in

the record to suggest that the intellectual property at issue – numerous musical performances by

BMI affiliated artists – was in the public domain, subject to fair-use exceptions, or otherwise

unprotected by the copyright laws.  Finally, the record suggests that Defendants' delay in

responding to Plaintiffs' suit is consistent with Defendants' refusal to acknowledge Plaintiffs'

efforts to resolve this matter prior to litigation.  Plaintiffs aver that, over the course of nearly two

years, its efforts to contact Defendants and resolve this matter by entry into a licensing

agreement entailed no fewer than twenty-one letters and forty-eight telephone calls to Defendants' place of business.  (Doc. No. 6-4 ¶¶ 4-9.)  Twelve of these telephone calls entailed direct communication with Defendant Mattiola.  (*Id*. ¶ 9.)  These efforts elicited no response from Defendants.  (*Id*. ¶ 10.)  The record demonstrates that a representative of the Defendants was personally served with the Complaint and summons at Defendants' place of business on August 3, 2007.  Taken together, Defendants' intransigence prior to the initiation of this litigation, and their refusal to enter an appearance and respond to Plaintiffs' allegations, indicate a conscious decision to ignore this problem in the hope that it will simply go away.  Defendants' refusal to respond to Plaintiffs entails precisely the sort of "culpable conduct" the Third Circuit contemplated in *Chamberlain*.

We therefore conclude that the entry of a default judgment against Defendants is appropriate in this matter.

**B.     Appropriate Relief**

*1.     Injunction*

Plaintiffs request relief in the form of an injunction ordering Defendants to discontinue infringement of Plaintffs' copyrights.  (Doc. No. 1 at 5.)  A district court is permitted to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  "When past infringement and a substantial likelihood of future infringements is established, a copyright holder is ordinarily entitled to a permanent injunction against the infringer."  *A & N Music Corp. v. Venezia*, 733 F.Supp. 955, 958 (E.D. Pa. 1990) (entering permanent injunction pursuant to 17 U.S.C. § 502 after entering default judgment against defendant); *Universal City Studios, Inc. v. Ahmed*, Civ. No. 93-3266,

1994 WL 185622, at *4 (E.D.Pa. May 13, 1994) (same); *Atlantic Recording Corp. v. Pancrazio*, Civ. No. 06-5572, 2007 WL 3036744, at *3 (D.N.J. Oct. 16, 2007); *see also Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) ("In the copyright realm, it has been said that an injunction should be granted if denial would amount to a forced license to use the creative work of another."); *Taylor Corp. v. Four Seasons Greetings*, LLC, 403 F.3d 958, 968 (8th Cir. 2005) (finding that the plaintiff "certainly has the right to control the use of its copyrighted materials, and irreparable harm inescapably flows from the denial of that right.").

While it is permissible to issue a permanent injunction to prevent copyright infringement, we must still consider the four factors governing issuance of a permanent injunction: (1) whether the moving party has shown actual success on the merits; (2) whether denial of injunctive relief will result in irreparable harm to the moving party; (3) whether granting of the permanent injunction will result in even greater harm to the defendant; and (4) whether the injunction serves the public interest. *See Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001); *United States v. Berks County, Pennsylvania*, 277 F.Supp.2d 570, 578 (E.D.Pa. 2003).

As to the first factor, Defendants' default prevents us from reaching the merits of Plaintiffs' claims through an adversarial fact-finding process. However, as discussed above, Plaintiffs have adduced evidence demonstrating Defendants' willful infringement of their copyright in this matter, and we accept their allegations as true.

As to the second factor, in the context of copyright law, a plaintiff who establishes a *prima facie* case of copyright infringement is entitled to a presumption of irreparable harm. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1254 (3d Cir. 1983) ("the prevailing view [is] that a showing of a *prima facie* case of copyright infringement or reasonable

likelihood of success on the merits raises a presumption of irreparable harm."); *see also FMC Corp. v. Control Solutions, Inc*., 369 F.Supp.2d 539, 573-74 n.42 (E.D.Pa. 2005) (finding that the plaintiff "made out a *prima facie* case of infringement and therefore is entitled to a rebuttable presumption of irreparable injury.").  Here, Plaintiffs have more than established such a *prima facie* case, and we presume that their harm is irreparable.

As to the third factor, the entry of a permanent injunction will not prejudice Defendants. Indeed, the record clearly demonstrates that if Defendants wish to continue using Plaintiffs' intellectual property, Plaintiffs are quite prepared to enter into a standard licensing agreement permitting them to do so.

Finally, as to the fourth factor, we conclude that an injunction which enforces federal copyright laws, and protects the rights and responsibilities defined by them, is by definition in the public interest.  *See Apple Computer*, 714 F.2d at 1255 ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.")

Given Defendants' willful disregard for Plaintiffs intellectual property rights in the past, we believe it is likely that Defendants will infringe upon those rights again in the future.  We therefore conclude that a permanent injunction is appropriate in this instance.

2.     *Damages*

The Copyright Act of 1976 provides that a copyright infringer is liable either for a copyright holder's actual damages, and any additional profits of the infringer, or statutory damages.  17 U.S.C. § 504(a).  A copyright owner who elects to recover an award of statutory

9

damages, instead of actual damages and profits, may recover between $750 and $30,000 for each infringement "as the court considers just." *Id*. § 504(c)(1). "[T]he court in its discretion may increase the award of statutory damages" up to $150,000 where it finds that the infringement was committed willfully. 17 U.S.C. § 504(c)(2).

"Statutory damages serve the dual purposes of compensation and deterrence: they compensate the plaintiff for the infringement of its copyrights; and they deter future infringements by punishing the defendant for its actions." *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, Civ. No. 03-4962, 2005 WL 67077, at *4 (E.D.Pa. Jan. 11, 2005). In determining the amount of statutory damages, it is important that an infringer "not reap a benefit from its violation of the copyright laws [and] that statutory damages should exceed the unpaid license fees so that defendant will be put on notice that it costs less to obey the copyright laws than to violate them." *A & N Music*, 733 F.Supp. at 958. In considering the appropriate amount of statutory damages, courts should consider "(1) expenses saved and profits reaped by the infringer; (2) revenues lost by the plaintiff; (3) the strong public interest in insuring the integrity of the copyright laws; and (4) whether the infringement was willful and knowing or innocent and accidental." *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc*., 658 F.Supp. 458, 465 (E.D.Pa. 1987). In determining the just amount of statutory damages, "[t]he defendant's conduct is the most important factor." *Schiffer*, 2005 WL 67077, at *5 (citing *Original Appalachian*, 658 F.Supp. at 465).

The entry of statutory damages here is complicated by the fact that liability has been established through default judgment, rather than on the merits. In default judgment cases, courts can order the minimum statutory damages without conducting a hearing. *Fonovisa v.*

*Merino*, Civ. No. 06-3538, 2006 WL 3437563, at *2 (E.D.Pa., Nov. 27, 2006) ("In default

judgments in copyright infringement cases, federal courts routinely award minimum statutory

damages."); *BMG Music v. Champagne*, Civ. No. 06-1251, 2006 WL 3833473, at *3 (D.N.J.

Dec. 29, 2006) ("As Plaintiffs request only $750.00 for each of the five infringements, the lowest

amount available under § 504(c)(1), the Court need not make . . . a determination [as to

willfullness] in order to find this amount just, and therefore need not conduct an evidentiary

hearing."); *see also Ortiz-Gonzalez v. Fonovisa, Inc*., 277 F.3d 59, 63-64 (1st Cir. 2002); *Morley*

*Music Co. v. Dick Stacey's Plaza Motel, Inc*., 725 F.2d 1, 2-3 (1st Cir. 1983).  In this case,

however, Plaintiffs have requested statutory damages in excess of the statutory minimum.  We

must therefore consider whether the facts contained in the Complaint, as well as any evidence

adduced by Plaintiffs in their filings, provide us with a sufficient basis to determine whether the

requested statutory damages are just.

      We are satisfied that the record before us is sufficient to make such a determination.

Relying upon the four guidelines articulated in *Original Appalachian*, we find that Plaintiffs'

requested statutory damages in the amount of $2,000.00 per infringement is both just and

appropriate.  With regard to the first two factors, we have the sworn affidavit of Lawrence

Stevens, stating that, had Defendants entered into a standard licensing agreement at the time

Plaintiffs first approached them in August 2005, the estimated licensing fees would have been

approximately $10,340.00.  (Doc. No. 6-4 ¶ 15.)  While this amount is an approximation, it is a

sufficient indicator that Defendants recognized significant savings as a consequence of their

infringement, and, conversely, that Plaintiffs suffered a revenue loss.  As to the third factor, as

discussed above, there is a strong presumption that enforcement of the copyright laws is always

in the public interest.  Finally, as to the fourth factor, we have already found that Defendants's infringement was willful, undertaken with knowledge of Plaintiffs' copyright, and with an offer to enter into a standard licensing agreement on the table.  In light of such behavior, the deterrent purpose of statutory damages is best served by an order for damages above the statutory minimum.

While Plaintiffs' requested damages are indeed above the minimum, they are by no means excessive, and are on the low end of the statutory range.  Moreover, the amount requested must be considered in the context of the length and nature of Defendants' conduct.  The "deterrent damages," meaning the difference between the total requested damages of $16,000.00 and the Plaintiffs' estimated lost licensing fees of $10,340.00, is $5,560.00.  The time period between Plaintiffs' discovery of Defendants' infringement and the filing of this suit was twenty-three months.  Given these numbers, the "deterrent damages" amount to approximately $242.00 per month.  This sum is appropriate given that, during each of those months, Defendants were on repeated notice of their infringement, were continually offered a simple and straightforward opportunity to terminate that infringement, and opted instead to flatly ignore Plaintiffs' attempts to resolve this dispute.

3.    *Costs and Fees*

Pursuant to 17 U.S.C. § 505, a district court may, at its discretion, award costs and attorneys' fees to a prevailing party in a copyright infringement suit.   17 U.S.C. § 505*; see also Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 155-156 (3d Cir. 1986) ("[T]he allowance of fees to the prevailing party . . . is entrusted to the evaluation of the district court.").  In *Lieb*, the Third Circuit identified the factors that should guide a district court in determining the appropriateness

12

of awarding costs and fees under § 505, noting, *inter alia*, that a finding of bad faith is not required for an award.  *See Lieb,* 788 F.2d at 155-57; *see also Don Post Studios, Inc. v. Cinema Secrets, Inc.*, 148 F.Supp.2d 572, 573-74 (E.D.Pa. 2001).  The other factors identified by the Third Circuit in *Lieb* include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Lieb*, 788 F.2d at 156; *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 535 n.19 (1994) (endorsing *Lieb* factors).

We find that an award of costs and fees is appropriate in this matter.  Defendants' conduct was objectively unreasonable and raises a legitimate deterrence consideration.  As we have already discussed, had Defendants simply responded to any one of Plaintiffs' numerous entreaties to enter into a standard licensing agreement, it is highly unlikely this matter ever would have reached this Court.  When litigation was initiated, Defendants once again continued to ignore this dispute, doing so in a manner that has now imposed additional expense upon Plaintiffs in the form of costs and legal fees.  We believe it is appropriate for Defendants to compensate Plaintiffs for these unnecessary expenses; and we further believe that the payment of costs and fees will make it clear to Plaintiffs that it is improper to ignore their obligations when they are properly served with a complaint and summons.

Plaintiffs' counsel, Stanley Cohen, has filed a detailed affidavit in support of Plaintiffs' request for costs and fees, which includes a billing sheet for services rendered to Plaintiffs in connection with this matter.  (Doc. No. 6-6, Cohen Declaration.)  Cohen is a well credentialed attorney, with several decades of expertise in the field of copyright and patent litigation.  (*Id*.)  We find his hourly rate of $575.00 reasonable and appropriate for an attorney of his experience

13

in the Philadelphia legal market.  We further find the total number of hours Mr. Cohen has

devoted to this matter to be reasonable, given the nature and circumstances of this suit.

Therefore, Defendants will be ordered to pay attorneys' fees in the amount of $4,830.00

and costs in the amount of $525.00.

> 4.    *Interest*

Finally, Plaintiffs request an allowance of  interest on the awards discussed above.  We

find that the allowance of interest on the statutory damages, costs and fees discussed herein are

likely to act as a further incentive to Defendants to promptly and finally resolve this matter.

Therefore, interest shall be allowed on the monetary awards discussed above, consistent with 28

U.S.C. § 1961.

## IV.    CONCLUSION

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BROADCAST MUSIC, INC. , ET AL          :
                                       :            CIVIL ACTION
        v.                             :
                                       :            NO. 07-CV-3040
SPRING MOUNT AREA BAVARIAN             :
RESORT, LTD., ET AL.                   :

**<u>ORDER</u>**

AND NOW, this __21st____ day of May, 2008, upon consideration of Plaintiffs' Motion

for Default Judgment, (Doc. No. 6.), and all papers submitted in support thereof, it is ORDERED

as follows:

1.      Plaintiffs' Motion for Default Judgment is GRANTED;

2.      Defendants are PERMANENTLY ENJOINED from any further infringement of
        Plaintiffs' copyrights in any manner.

3.      Defendants are ORDERED to pay statutory damages in the amount of
        $16,000.00.

3.      Defendants are ORDERED to pay attorneys' fees in the amount of $4,830.00 and
        costs in the amount of $525.00.

4.      Interest on the statutory damages, attorneys' fees, and costs shall be allowed
        consistent with 28 U.S.C. § 1961.

IT IS SO ORDERED.

                                                BY THE COURT:

                                                _____
                                                R. Barclay Surrick, Judge